IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**MARQUIS TILMAN**                                                                                           **PLAINTIFF**

**V.**                                                                       **Civil Action No.:  2:20-cv-10-KS-MTP**

**CLARKE COUNTY, SHERIFF TODD
KEMP, IN HIS INDIVIDUAL CAPACITY,
DEPUTY BENJAMIN IVY, IN HIS INDIVIDUAL
CAPACITY, AND DEPUTY ANTHONY CHANCELOR,
DEPUTY RYAN EVANS, DEPUTY AUSTIN TOUCHSTONE,
DEPUTY JUSTIN RAWSON, AND DEPUTY BILLY
LEWIS, IN THEIR INDIVIDUAL CAPACITIES
AND/OR OTHER EMPLOYEES, INCLUDING
SUPERVISORY OFFICIALS WHOSE IDENTITIES
ARE CURRENTLY UNKNOWN**                                                             **DEFENDANTS**

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Come now Defendants Clarke County, Sheriff Todd Kemp, Anthony Chancelor, Ryan Evans, Austin Touchstone, Justin Rawson, and Billy Lewis, by and through counsel, and pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, submit their Motion for Partial Summary Judgment, as follows:

1. This matter arises out of a March 25, 2019, high-speed vehicular pursuit of Plaintiff, which culminated in his arrest and subsequent conviction for aggravated assault on a peace officer. *Order, CM/ECF Doc. No. 53*, p. 1, 12; CM/ECF Doc. No. 17-1;  *Pl.'s Dep.*, p. 6, attached hereto as **Exhibit A.**  Plaintiff's Second Amended Complaint alleges that once his vehicle was stopped and he detained, he was "brutally" beaten by Clarke County deputies and denied medical care. *CM/ECF Doc. No. 38*, ¶ 18.

2. Plaintiff's Second Amended Complaint asserts the following claims against the moving defendants under 42 U.S.C. § 1983: (1) excessive force and violation of Plaintiff's right to due process; (2) a *Monell* claim against Clarke County and Sheriff Kemp; (3) negligent training, supervision, and retention as to Sheriff Kemp and Clarke County; (4) supervisory liability; (5) failure to intervene; (6) negligence, gross negligence, and reckless disregard; and (7) assault and battery. *Sec. Am. Compl.* ¶¶31-57.

3. This Court previously dismissed the following claims: all excessive force claims arising out of any use of force during the pursuit of Plaintiff during the high-speed chase, any claims arising out of Plaintiff's medical care including supervisory liability for the same, as well as the negligence and gross negligence claims. *See Order*, pp. 8-9, 11-12, 15.

4. Plaintiff's Second Amended Complaint alleges he was "brutally beaten by Clarke County officials, using excessive force, [and] handcuffs…" once he "was detained by Deputy Ivy." *Sec. Am. Compl.* ¶12. According to Plaintiff's complaint, he "was stomped, kicked, punched, kneed, and hit repeatedly…." *Id.* at ¶20. Plaintiff's deposition testimony, however, is vastly different from the allegations contained in his complaint.

5. Plaintiff contends that he led Defendants Ben Ivy and Anthony Chancelor, as well as Quitman Police Chief Joey Moulds, on a high-speed chase of upwards of one hundred (100) miles per hour, for approximately fifteen to twenty minutes. *Pl.'s Dep.*, p. 16, 18. According to Plaintiff, Moulds struck Plaintiff's vehicle, and Plaintiff in turn struck Chancelor's patrol vehicle. Later, Chancelor struck Plaintiff's vehicle with his patrol car

before Plaintiff came to a full stop on the side of Highway 45. *Id.* at 20-21. It was then that Ben Ivy's vehicle struck Plaintiff's driver's side door. *Id.* at 21:1-13.

6. Plaintiff exited his Sentra on the passenger side, hands raised and "laid straight down on the ground" per his own account. *Id.* at 21:24-22:1-3. Plaintiff's car was rendered inoperable by two shots to the tires by Anthony Chancelor's service weapon. *Id.* at 22:10-11.

7. It was then that Plaintiff alleges officers at the scene "started beating" him. *Id.* at 23. More specifically, Plaintiff contends that Ben Ivy hit him in his right eye, then his left. *Id.* at 24:10-14. Plaintiff could not recall whether Ivy hit him with a closed or open hand. *Id.* at 24:20-23. Plaintiff cannot recall who else struck him because he was facedown and could not see from that vantage point. *Id.* at 24:22-25. However, he did recall that the officers gathered around him were Quitman Police Chief Mosley, and Deputies Chancelor and Ivy. *Id.* at 25:1-3. Nevertheless, other than Ivy striking the side of his face, Plaintiff does not recall with any specificity what the officers did thereafter or whether any officer other than Deputy Ivy struck a blow. *Id.* at 27-28. Plaintiff recalls having seen Sheriff Kemp at the scene as he was being placed in the patrol car to be transported. *Id.* at 28:15-25-29:1-5. He did not recall having spoken with Kemp or interacted with him. Plaintiff contends that he was treated for a number of injuries at a local hospital and then transported to a hospital in Jackson, Mississippi. *Id.*

8. As far as Defendant Ryan Evans, however, Plaintiff did not have any personal knowledge of Evan's involvement in any use of force or his having witnessed said force, and testified that Evans "came to the chase late…" *Pl.'s Dep.,* p. 42:9-24. He

3

further remarked that Evans "was never…right there on the scene…when everything was really taking place." *Id.* at 43:1-5. Indeed, Plaintiff had no direct knowledge which contradicted Evan's statement which indicated he saw no use of force. *Id.* at 44:8-22; *see also Evan's Statement* CLT-(TILMAN)-000089, attached hereto as **Exhibit B.**

9. Moreover, Plaintiff conceded he had no evidence to dispute that Defendant Touchstone did anything more than lawfully transport him to jail. *Pl's Dep.*, p. 46:12-16; *see also Touchstone Statement,* CLT-(TILMAN)-000088, attached hereto as **Exhibit C.** The same can be said of any allegations of excessive force or failure to intervene asserted against Agent Rawson. Plaintiff testified that he had no evidence to refute Rawson's statement which indicated he neither inflicted nor witnessed any use of force. *Pl's Dep.*, p. 47; *see also Rawson Statement* at CLT-(TILMAN)-000090, attached hereto as **Exhibit D.** Rawson's testimony reflects that once the chase ended, he arrived on the scene and saw "Mr. Tilman on the ground and several deputies trying to secure him." *Rawson Dep.*, p. 22:4-7, attached hereto as **Exhibit E.** Once he got up to Plaintiff, he "grabbed" his "handcuffs" because he "noticed the deputies were trying to gain control of his arms." *Id.* at 22:7-10. Once the other officers secured Plaintiff's arms, Rawson cuffed him and almost "immediately started to search the vehicle." *Id.* at 10-13. A weapon was recovered from Plaintiff's vehicle by Rawson. *Id.*; *see also Rawson Statement.*

10. Likewise, Plaintiff conceded he recalled nothing about Deputy Lewis' conduct at the scene of his arrest. *Id.* at 47:19-25, 50:2-9. Deputy Lewis testified that after the chase came to an end, Plaintiff bailed out of his vehicle in a "baseball slide." *Lewis Dep.*, p. 27:14-24, attached hereto as **Exhibit F.** As Tilman hit the ground, he put his arms

4

under him and then started to "get up" off the ground. *Id.* at 28:1-3. Lewis secured Plaintiff with his knee on his right shoulder until he could hold of his arm, as well as a knee on Plaintiff's elbow. *Id.* at 28:1-9.  Lewis recounted that he was concerned for the safety of Plaintiff and the officers at the scene and concerned that Plaintiff may have a gun. *Id.* at 28.   After Plaintiff was secured, Lewis helped direct traffic on Highway 45. *Id.* at 30; *see also Lewis Statement* CLT-(TILMAN)-000093 through CLT-(TILMAN)-000094, attached hereto as **Exhibit G.**

11.    Plaintiff has sued Clarke County, as well as Sheriff Kemp and the County deputies in their official capacities. Given that Clarke County has appeared and is defending the claims asserted, the County officers and the sheriff in their "official capacities" are duplicative and unnecessary defendants. *See Castro Ramero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Estate of Manus v. Webster County, Mississippi*, 2014 WL 1285946, at *2 (N.D. Miss. 2014). Because the official capacity claims against the officers are duplicative of the claims against the County, Defendants Kemp, Ivy, Chancelor, Touchstone, Rawson, Evans and Lewis in their official capacities are due to be dismissed.

12.    As for the excessive force claim, Plaintiff alleges that Deputy Ivy struck him in the face on more than one occasion and hit both of his eyes. *Pl.'s Dep.*, p. 24.  He identifies one other Clarke County deputy who was present when that happened, Anthony Chancelor, yet failed to offer any testimony that Chancelor struck him or assaulted him or did anything other than help secure Plaintiff to the ground. *Pl. Dep.,* p. 24, 27-18.

13. As for the remaining Clarke County deputies at the scene, Plaintiff is unable to recall whether they had any involvement in the use of force or whether they or Sheriff Kemp were in a position to intervene in any purported unconstitutional use of force. *Id.* at 24:22-28. As such, Plaintiff cannot create a genuine issue of material fact as to the necessary elements of his excessive force claim against any officer except Ivy. Moreover, Plaintiff's testimony fails to establish a failure to intervene claim against any of the officers at the scene with the exception of Deputy Chancelor. *Id.* at 25-28.

14. Thus, summary judgment should be granted on the excessive force claim for all movants except Ben Ivy. In addition to lack of direct involvement, Plaintiff cannot establish the necessary elements of any constitutional claims against Defendants Lewis, Rawson, Touchstone, and Evans, and as such, they are entitled to qualified immunity and summary judgment as to all section 1983 claims as outlined herein below.

15. To state an excessive force claim under Section 1983, the Plaintiff must demonstrate (1) an injury; (2) that it resulted directly and only from the use of force that was excessive to the need; and (3) the use of force was objectively unreasonable. *Stepney v. City of Columbia,* 695 F. Supp. 2d 412, 417 So. Dist. (Miss. 2010). The Court considers three factors in evaluating the "objective reasonableness" of defendants' actions; (1) the severity of the crime; (2) whether the plaintiff posed an immediate threat to the safety of the officer or others; and (3) whether the plaintiff was actively resisting arrest or was attempting to evade arrest. *Guidorez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998).

16. As previously stated, Plaintiff testified that Ivy struck him in the face. Plaintiff could not testify with any certainty that any other officer used force on him in

6

any way. The only Clarke County deputy whose Plaintiff's account placed in a position to see the force used by Ivy was Chancelor. As such, the other deputies' testimony about their conduct at the scene is unrefuted.

17. According to Deputy Lewis, he secured Plaintiff with his knee on his right shoulder until he could hold of his arm and then a knee to Plaintiff's elbow. *Lewis Dep.*, p. 28:1-9. Lewis recounted that he was concerned for the safety of Plaintiff and the officers at the scene and concerned that Plaintiff may have a gun. *Id.* at 28. Although Lewis attempted a strike to Plaintiff's back in order to get Plaintiff to release his hands, the attempted maneuver landed on the head of Quitman Police Chief Joey Moulds, who was also at the scene. *Id.* at 29. Lewis further recalled that Plaintiff complained he was having trouble breathing and need to stretch his leg out, so Lewis sat him up and leaned him against Plaintiff's vehicle. *Id.* at 29:13-25. After Plaintiff was secured, Lewis helped direct traffic on Highway 45. *Id.* at 30.

18. Rawson's testimony reflects that once the chase ended, he arrived on the scene and saw "Mr. Tilman on the ground and several deputies trying to secure him." *Rawson Dep.*, p. 22:4-7. Once he got up to Plaintiff, he "grabbed" his "handcuffs" because he "noticed the deputies were trying to gain control of his arms." *Id.* at 22:7-10. Once the other officers secured Plaintiff's arms, Rawson cuffed him and almost "immediately started to search the vehicle." *Id.* at 10-13. A weapon was recovered from Plaintiff's vehicle.

19. Both Rawson and Lewis testified that they believed Plaintiff was in possession of a weapon, had been seen reaching down toward the area where a weapon was actually recovered from the vehicle. *Rawson Dep.,* p. 19:17-24, 21:21-25.

20. In light of all of the circumstances, the contact with Plaintiff by Lewis and Rawson was reasonable. Plaintiff had just been involved in a high-speed chase, was known to the officers to reportedly be a felon in possession of a firearm, was seen reaching for the something in the floorboard from which the weapon was recovered and bailed out of his vehicle only to tuck his arms under him near his waistband—a fact not unnoticed by Lewis who thought Plaintiff might have a weapon stowed in his waistband. Under the circumstances, Lewis' knee to Plaintiff's shoulder and elbow to secure him before pulling his arms behind his back to be handcuffed was reasonable. Plaintiff did not refute any of Lewis' or Rawson's testimony or statements. *Pl.'s Dep*, p. 47-50.

21. Contact between Plaintiff and Deputies Evans and Touchstone was non-existent. *Pl.'s Dep.,* pp. 42-44, 45-47; *Touchstone Statement,* CLT-(TILMAN)-000088; *Evan's Statement* at CLT-(TILMAN)-000089. Plaintiff has offered no testimony or other evidence which controverts this.

22. It is well-settled that an "officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph v. Bartlett,* 981 F.3d 319, 343 (5th Cir. 2020).

23. As previously argued, Plaintiff cannot create a genuine issue of material fact as to the conduct of Deputies Lewis, Rawson Evans, and Touchstone. Indeed, Evans' statement and testimony was that he arrived late to the scene and upon arrival Plaintiff was secured and ready to be transported. *Evans Statement*, CLT-(TILMAN)-000089. Touchstones' account was similar to that of Evans—namely that he arrived after Plaintiff was secured and merely transported him. *Touchstone Dep*, pp. 19-20, attached hereto as **Exhibit H**.

24. Moreover, as demonstrated by the movants, Deputies Lewis and Rawson recounted having hands-on contact with Plaintiff and it was reasonable under the circumstances. Nothing in their undisputed testimony or statements establishes that they witnessed any unconstitutional conduct. The same can be said of Touchstone and Evans. Significantly, Plaintiff cannot dispute the accounts of Rawson, Lewis, Evans, or Touchstone---who all indicated they witnessed no unconstitutional conduct by any of their fellow officers. *Pl.'s Dep.*, pp. 27-28. Thus, there can be no bystander liability claim against these defendants. Rather, Plaintiff alleges that Chancelor was the officer who restrained him while Ivy struck him and is the only officer which Plaintiff puts at a vantage point to have been intervened in any purportedly unconstitutional conduct.

25. As for the failure to train, supervise or discipline claim, proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference. *Id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798–99 (5th Cir.1998).

A plaintiff must generally demonstrate at least a pattern of similar violations. *Id.* (citing *Snyder*, 142 F.3d at 798).

26.  The Fifth Circuit has held that where officers have received the training required by state law, "the plaintiff must show that the legal minimum of training was inadequate." *Sanders-Burns v. City Of Plano*, 594 F.3d 366, 381–82 (5th Cir. 2010)(citing *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir.1992)). Full time deputies must be trained and certified by the law enforcement officers training program within one year on the job pursuant to Miss. Code Ann. §45-6-11.

27.  In the case at bar, all of the deputies who are named defendants have successfully completed the law enforcement academy and/or hold a professional certification from the Board on Law Enforcement Officer Standards and Training. See *Certificates,* attached hereto as **Exhibit I.** *Chancelor Dep.*, p. 14:6-14, attached hereto as **Exhibit J;** *Chancelor Certificate,* CLT-(TILMAN)-000451; *Evans Certificate:* CLT-(TILMAN)-000564; *Rawson Certificate* CLT-(TILMAN)-000529; *Ivy Certificate* at CLT-(TILMAN)-000415; *Ivy Dep.*, p. 39:15-16, attached hereto as **Exhibit K**; *Touchstone Dep.*, p. 9:25-10:1-9; *Lewis Certificate* at CLT-(TILMAN)-000498; *Lewis Dep.*, p. 39:20-25-40:1. Accordingly, Plaintiff cannot demonstrate a failure to train claim against Sheriff Kemp or the County.

28.  Moreover, as outlined hereinabove, Plaintiff has been unable to create a genuine issue of material fact as to any unconstitutional conduct on the part of Deputies Lewis, Rawson, Evans, and Touchstone. Inasmuch as Plaintiff must show a causal connection between a failure to supervise or discipline and unconstitutional conduct by

the deputies, there can be no supervisory liability as to Sheriff Kemp for the actions of Lewis, Rawson, Evans or Touchstone.

29. To establish liability against a county, a claimant must demonstrate (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera v. Houston Indep. Sch. Dist*, 349 F.3d 244, 247-249 (5th Cir. 2003). "Proof of an official policy or custom can be shown in several ways, including: (1) formally adopted policies; (2) informal customs or practices; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an official with final policymaking authority." *Thomas v. Prevou,* 2008 WL 111293, *3 (S.D. Miss. 2008)(citing *Monell v. City of New York Dept. of Social Servs.*, 436 U.S. 658, 694 (1978); *Snow v. City of El Paso, Texas*, 501 F. Supp. 2d 826, 831 (W.D. Tex. 2006)). Plaintiff's failure to demonstrate a constitutional claim based on several of the defendants conduct, is fatal to any section 1983 claim against a county arising out of that same conduct. *See Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997)(holding that a constitutional violation is an essential element in a 1983 claim against a municipality). Moreover, Plaintiff has offered no evidence that his constitutional deprivation was attributable to any policy, practices or customs.

30. As outlined hereinabove, Plaintiff cannot create a genuine issue of material fact as to the excessive force claims which he has asserted against Lewis, Touchstone, Evans, Chancelor, Kemp, and Rawson inasmuch as he cannot testify with any certainty that any of them participated in any use of force against him. Moreover, Plaintiff can only

create a genuine issue of material fact as to the failure to intervene claim against Chancelor. Inasmuch as Plaintiff cannot establish any conduct by the other defendants resulted in a violation of his constitutional rights, any constitutional claims against Clarke County arising out of the same warrant summary judgment for a missing essential element of liability under *Monell.*

31.     Plaintiff's state-law tort claims are exclusively governed by the provisions of the MTCA, which provides immunity to governmental entities and employees who act within the course and scope of their employment. *Little v. Miss. Dept. of Transp.*, 129 So.3d 132, 136 (Miss. 2013); *see also* Miss. Code Ann. § 11-46-7. The police function exemption of the MTCA provides two avenues of immunity: (1) if the claimant was engaged in criminal activity at the time of the incident in question, then the County is immune from suit, and; (2) even if the claimant was not engaged in criminal activity, if the officers did not act with reckless disregard, then the County is immune from suit. *See Estate of James Stanley Williams v. City of Jackson, Mississippi*, 844 So. 2d 1161, 1164 (Miss. 2003); see also Miss. Code Ann. 11-46-9(1)(c). Here, Plaintiff was engaged in criminal activity at the time of his pursuit and arrest, as evidenced by the charge and conviction of assault on a police officer. *See CM/ECF Doc. No. 17-1.* Moreover, Plaintiff was charged and indicted on one count of felon in possession of a firearm and one count of felony fleeing. *Court Documents:* CLT-(TILMAN)-000014 through CLT-(TILMAN)-000017; CLT-(TILMAN)-000055, attached hereto as **Exhibit L.** Because Plaintiff was engaged in criminal activity at the time of the stop and subsequent arrest, the County and its deputies are immune from suit and summary judgment is warranted.

12

32. Even were Plaintiff not engaged in criminal activity at the time, as a matter of law, Plaintiff cannot show the officers acted with reckless disregard. In the case at bar, the actions of Defendants Rawson, Lewis, Evans, and Touchstone cannot be said to constitute reckless disregard. As outlined herein, Lewis secured Plaintiff with his knees on Plaintiff's shoulder and elbow until such time as Plaintiff was handcuffed. *Lewis Dep.*, pp. 28-29. Upon Plaintiff's complaining about being short of breath, Lewis immediately sat Plaintiff up and allowed him to stretch out his legs. *Id.* at 29. Rawson merely handcuffed Plaintiff. *Rawson Dep.*, p. 22. Evans was late to the scene—arriving after Plaintiff had already been arrested and was about to be transported. *Evan's Statement* at CLT-(TILMAN)-000089. Touchstone merely transported Plaintiff to the Clarke County Jail. *Touchstone Statement,* CLT-(TILMAN)-000088. *Touchstone Dep*, pp. 19-20.

33. An assault occurs where a person "(1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (2) the other is thereby put in such imminent apprehension." A battery goes one step beyond an assault in that a harmful contact actually occurs. *Banks v. Lockhart,* 119 So.3d 370, 372 (Miss. Ct. App. 2013)(citing *Whitten v. Cox*, 799 So.2d 1, 8 (¶ 7) (Miss.2000) (citations omitted) (quoting *Webb v. Jackson,* 583 So.2d 946, 950–51 (Miss. 1991)).

34. For the purposes of the MTCA, the Act does not waive "immunity from liability against…claims for assault, battery… or any claim which involves allegations of malice." *Ducksworth v. Rook*, 2015 WL 737574, at *6 (S.D. Miss. 2015)(citations omitted).

13

As such, Clarke County and its officers in their representative capacities are immune as to this claim. Thus, summary judgment is warranted.

35. As to the individual capacity assault and battery claims, Plaintiff could only testify with any certainty that Deputy Ivy struck him. *Pl.'s Dep.*, pp. 24-28. He could not recall any other officer, including Sheriff Kemp, actually having made harmful contact with his person. *See Id.* As such, the battery claims against all of the movants with the exception of Ivy warrant summary judgment inasmuch as Plaintiff cannot create a genuine issue of material fact.

36. Additionally, even based on Plaintiff's own testimony, he cannot show that the acts of Lewis, Rawson, Evans, Chancelor, Touchstone were "(1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact…." *Banks,* 119 So.3d at 372; *see also Pl's Dep.*, pp. 25, 44-47. As such, the assault claim against those defendants warrants summary judgment.

WHEREFORE, PREMISES CONSIDERED, for all of the reasons outlined herein, as well as those advanced in the movants' Memorandum of Authorities Plaintiff has failed to create a genuine issue of fact as to most of the claims asserted against the movants—warranting dismissal of the same. More specifically, Plaintiff has failed to create a genuine issue of material fact as to the excessive force claims against Chancelor, Evans, Touchstone, Rawson, and Lewis. Plaintiff has failed to do the same as to the failure to intervene claims of Evans, Kemp, Touchstone, Rawson, and Lewis. Moreover, Plaintiff cannot demonstrate any supervisory liability claims arising out of the conduct of the

aforementioned defendants or out of the purported failure to train the moving defendants. Moreover, Plaintiff's tort claim arising out of the defendants' conduct warrants summary judgment based on the police function exemption of the MTCA given that Plaintiff was engaged in criminal activity at the time of his arrest. Finally, Plaintiff's assault and battery claims warrant partial summary judgment due to his failure to demonstrate necessary elements of those claims against several of the moving defendants.

**Date: October 29, 2021.**

Respectfully submitted,

**CLARKE COUNTY, SHERIFF TODD KEMP, DEPUTY BENJAMIN IVY, DEPUTY ANTHONY CHANCELOR, DEPUTY RYAN EVANS, DEPUTY AUSTIN TOUCHSTONE, DEPUTY JUSTIN RAWSON, AND DEPUTY BILLY LEWIS**

By: */s/ Jessica S. Malone*
      One of Their Attorneys

WILLIAM R. ALLEN (MSB #100541)
JESSICA S. MALONE (MSB #102826)
Allen, Allen, Breeland and Allen, PLLC
214 Justice Street
P. O. Box 751
Brookhaven, MS 39601
Tel:    601-833-4361
Fax:   601-833-6647
wallen@aabalegal.com
jmalone@aabalegal.com

## **CERTIFICATE OF SERVICE**

I, the undersigned of Allen, Allen, Breeland & Allen, PLLC, hereby certify that on this day, I electronically filed the foregoing Motion for Partial Summary Judgment with the Clerk of the Court via ECF, which gave notice of the same to:

>Carlos E. Moore, Esq.
>Justin Smith, Esq.
>The Cochran Firm–MS Delta
>P. O. Box 1487
>Grenada, MS 38902-1487
>cmoore@cohranfirm.com
>     *Attorney for Plaintiff*

This the 29th day of October, 2021.

>                              */s/ Jessica S. Malone*
>                              OF COUNSEL