IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**MARQUIS TILMAN**                                                                                            **PLAINTIFF**

**V.**                                                                             **Civil Action No.: 2:20-cv-10-KS-MTP**

**CLARKE COUNTY, SHERIFF TODD
KEMP, IN HIS INDIVIDUAL CAPACITY,
DEPUTY BENJAMIN IVY, IN HIS INDIVIDUAL
CAPACITY, AND DEPUTY ANTHONY CHANCELOR,
DEPUTY RYAN EVANS, DEPUTY AUSTIN TOUCHSTONE,
DEPUTY JUSTIN RAWSON, AND DEPUTY BILLY
LEWIS, IN THEIR INDIVIDUAL CAPACITIES
AND/OR OTHER EMPLOYEES, INCLUDING
SUPERVISORY OFFICIALS WHOSE IDENTITIES
ARE CURRENTLY UNKNOWN**                                   **DEFENDANTS**

## DEFENDANTS' MEMORANDUM OF
## AUTHORITIES IN SUPPORT OF MOTION IN LIMINE

Come now, Defendants Deputy Benjamin Ivy and Deputy Anthony Chancelor, by and through counsel, and respectfully submit their Memorandum of Authorities in Support of the Motion in Limine, as follows:

### INTRODUCTION

This matter arises out of a March 25, 2019, high-speed vehicular pursuit of Plaintiff, which culminated in his arrest and subsequent conviction for aggravated assault on a peace officer. *Order, CM/ECF Doc. No. 53*, p. 1, 12; CM/ECF Doc. No. 17-1; *Pl.'s Dep.*, p. 6. Plaintiff's Second Amended Complaint alleges that, once his vehicle was stopped by Clarke County deputies, he was "brutally" beaten at the scene of his arrest by the County deputies and denied medical care. *CM/ECF Doc. No. 38*, ¶ 18. Plaintiff's deposition testimony differed from those allegations—with Plaintiff instead contending

that Defendant Deputy Benjamin Ivy struck him in the face while Defendant Deputy Anthony Chancelor stood by and failed to intervene. *Pl.'s Dep.,* pp. 23-25, 27-29, CM/ECF Doc. No. 80-1.

Following the submission of initial dispositive motions, discovery, and the filing of a motion for summary judgment, the Court dismissed all but the excessive force claim against Defendant Ivy and the bystander liability claim against Chancelor. *Mem. Op. and Order*, CM/ECF Doc. No. 88, pp. 11-12.

Based on the line of questioning of each of the deponents during discovery in this cause, the movants respectfully request that the Court limit Plaintiff's counsel's questions and/or arguments before the jury concerning race: including but not limited to Defendants' interpersonal relationships with persons of other races; Defendants' memberships in social clubs, churches which Plaintiff's counsel deems to lack racial diversity; and all other race-related topics. The movants request the same inasmuch as it is the line of questioning is an impermissible use of character evidence, is not relevant to Plaintiff's burden of proof inasmuch as racial animus is not a necessary element of any of Plaintiff's claims, and is elicited solely for any prejudicial value which might be gleaned by making racially charged arguments or eliciting racially charged questions before the jury.

## FACTUAL BACKGROUND

Plaintiff's counsel elicited testimony and made remarks during the course of Defendants' depositions which were intended solely to paint a picture of the Clarke

County deputies and Sheriff Todd Kemp as having been motivated by racial animus on the day of Plaintiff's arrest.

### A. Deposition of Benjamin Ivy

Plaintiff's counsel elicited testimony regarding past instances where Ivy had used force against arrestees and whether those arrestees were African-American just as is Plaintiff in the case at bar—even referring to one such arrestee as a "victim." *Ivy Dep.*, pp. 10:24-16:24. The deposition devolved into Plaintiff's counsel accusing Ivy of having "a problem with black people," inquiring if he was a member of the Klu Klux Klan, and inquiring as to whether Ivy had ever used the "N" word, or whether he supported Black Lives Matter. *Id.* at 16:25-18:1-4; 48:7-15. Ivy was asked to name each of his black friends and asked where they worked, where they lived. *Id.* at 18-22:1-25.

Ivy was asked if he identified as a "redneck" or whether others thought him to be a "redneck." *Ivy Dep.*, p. 23:14-19. Ivy was asked whether he engaged in stereotypical "redneck" behavior, such as dipping "snuff" or chewing tobacco, drinking moonshine, or having been referred to as a "Bubba." *Id.* at 24-25.

Ivy was further asked during the deposition to weigh in on whether Sheriff Todd Kemp is racist. Ivy Dep., p. 50:24-51:1-19. He was asked whether Kemp used a racial slur in regards to Plaintiff or whether Kemp had ever used "the 'N' word." *Id.* at 52:18-25. Ivy was asked if he had ever heard a colleague at Clarke County use the "N" word. *Id.* at 52:25-53:1-4.

### B. Deposition of Anthony Chancelor

Similarly, Anthony Chancelor was questioned about whether "black lives matter," whether he has used the "N" word, and whether he has belonged to any "racially exclusive group." *Chancelor Dep.*, p. 19:5-17. Chancelor was asked to list all of his "black friends" and even asked whether those friends visited his house. *Id.* at 19-21.

Plaintiff's counsel made reference to the George Floyd case and asked Chancelor about his familiarity with the facts of that case. *Id.* at 32-33. Chancelor was asked why anyone should "believe these white officers did not beat this black man at the order of the sheriff." *Id.* at 36:3-5. Plaintiff's counsel also made reference to "Mississippi's sorted history" with racism during Chancelor's depositions. *Id.* at 40.

### C. Other Witnesses for the Defense

Justin Rawson was likewise asked if he had a problem with "blacks" and whether he had any black friends. *Rawson Dep.*, p. 13:18-25, CM/ECF Doc. No. 80-5.[1]  Rawson was questioned about his having attended a private school, which Plaintiff's counsel deemed "racially exclusive." *Id.* at 14-15. Rawson was questioned as to whether he had ever in his life used a racial slur in reference to African-Americans. *Id.* at 16-17.

Deputy Lewis' was likewise peppered with questions about whether he has black friends, whether African-Americans attend his church, whether he attended public school, whether his children attended private school, whether he had ever in his life used

---

[1] At the time of their depositions, Deputies Rawson, Lewis, and Touchstone were still named defendants in this cause, yet were dismissed by this Court following their submission of a motion for summary judgment. Defendants anticipate they may call Rawson, Lewis, Touchstone or Sheriff Kemp at trial in this matter, and as such, cite examples of similar lines of questioning by Plaintiff during the above depositions.

a racial slur in reference to African-Americans or whether he had ever heard a colleague use such a slur. *Lewis Dep.*, pp. 57-64, CM/ECF Doc. No. 80-6. Deputy Touchstone was also questioned about whether "black lives matter," was asked to recite the phrase "black lives matter," asked to list his black friends, and asked about the racial make-up of his church. *Touchstone Dep.*, pp. 13-15.

## LEGAL ARGUMENTS

### I.  Impermissible Use of Character Evidence

Rule 404 of the Federal Rules of Evidence provides: "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Here, just as in depositions in this cause of action, at trial Plaintiff's counsel presumably will attempt to elicit testimony and make arguments before the jury concerning Defendants' and the defense witnesses' association and fellowship (or lack thereof) with members of other races, their use of racial epithets or racially insensitive language, their lack of membership in ethnically diverse associations and organizations, their opinions on whether black lives matter, whether they matriculated at a public school, or whether Defendants or defense witnesses have ever engaged in conduct which counsel opposite deems "redneck."

This will be done with the sole purpose of proving that Defendants hold attitudes and beliefs regarding African-Americans which are consistent with racial animus---the very same racial animus which Plaintiff alleges motivated Defendants to stop, arrest and use force against him. Inasmuch as Plaintiff seeks to put on such testimonial evidence to prove that Defendants acted on scene of Plaintiff's arrest in conformity with what Plaintiff

characterizes as their prior racist character, the trial strategy runs afoul of Rule 404(a)(1) and should be excluded.

## II. Lack of Relevance

Under Rule 401 of the Federal Rules of Evidence, evidence is considered relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). (b) "When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct." Fed. R. Evid. 405(b). "Racial epithets are appropriate evidence only where the use of the epithet is directed at the plaintiff or is otherwise used in a way that sheds light on the circumstances surrounding the plaintiff's claim." *Madison v. Courtney,* 2019 WL 3801891, at *4 (N.D. Tex. 2019).

Here, it is undisputed that the officers on the scene did not use racial epithets that were directed at Plaintiff. Moreover, as outlined herein below, racial animus is not a necessary element of any of the remaining claims asserted against Defendants.

### A. Excessive Force Claim: Deputy Ivy

To prevail on an excessive force claim under Section 1983, a claimant must demonstrate the following: (1) an injury; (2) that resulted directly and only from the use of force that was excessive to the need; and (3) the use of force was objectively unreasonable. *Stepney v. City of Columbia*, 695 F. Supp. 2d 412, 417 (S.D. Miss. 2010). The "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and

circumstances confronting them, without regard to their underlying intent or motivation. *Graham v. Connor,* 109 S.Ct. 1865, 1872, 490 U.S. 386, 397 (1989)(citing *Scott v. United States*, 436 U.S. 128, 137–139, 98 S.Ct. 1717, 1723–1724, 56 L.Ed.2d 168 (1978); *see also Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879 (1968)(in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard"). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* (citing *Scott v. United States,* supra, 436 U.S. at 138, 98 S. Ct. at 1723(citing *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L.Ed.2d 427 (1973)).

Thus, eliciting testimony or making arguments as to whether Defendant Ivy or Sheriff Kemp have ever used racial epithets or whether Ivy or other witnesses testifying for the defense have harbored racial animus for Plaintiff, George Floyd, Black Lives Matter or anyone else is not relevant to the jury's inquiry and would only serve to confuse the jury. *See* Fed. R. Evid. 403.

  **B. Failure to Intervene/Bystander Liability**

Plaintiff's sole remaining claim against Defendant Chancelor is one for failure to intervene. It is well-settled that an "officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph v. Bartlett,* 981 F.3d 319, 343 (5th Cir. 2020). Not one of the elements of Plaintiff's failure to intervene claim against

Chancelor requires that Plaintiff demonstrate racial animus was a motivating factor in Chancelor's alleged failure to intervene.

Thus, just as with the excessive force claim against Ivy, any evidence of whether Chancelor has engaged in objectionable conduct towards minorities is irrelevant to the jury's inquiry into the disputed facts at hand. Inasmuch as testimony and/or arguments concerning racial animus, concerning the history of race relations in Mississippi, or concerning anything related to racial inequality is irrelevant and confusing for the jury, such testimony should be excluded. *See* Fed. R. Civ. P. 403.

### III. Prejudicial Effect on the Defense

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. R. 403. For instance, in *Henderson v. City of Houston*, 2001 WL 1131861, at *1 (5th Cir. 2001), the Fifth Circuit upheld the district court's exclusion of evidence that the plaintiff's employer had a confederate flag tattoo. In so doing, the appellate court held that the trial court's decision was "sound and well-reasoned" where the employer's decision to apply the tattoo was too remote in time to the plaintiff's claims to be probative of racial animus and where evidence of the tattoo would cause unfair prejudice that substantially outweighed any probative value. *Id.* at *4.

Here, as previously argued, racial animus is not a necessary element of Plaintiff's claims against the movants. Moreover, any evidence that the defendants attended a private school, that they attend a church that does not have any African-American

members, that they fail to have a sufficient number of African-American friends, or that the movants or other defense witnesses have failed to actively support Black Lives Matter or hold certain opinions on the George Floyd case holds no probative value. Even were any probative value to be gleaned from any of the aforementioned, the prejudicial effect on the defense's ability to have a fair trial on the fact issues before the jury would be grave.

Accordingly, this Court should limit Plaintiff's line of questioning of Defendants and/or defense witnesses and arguments made to the jury on the aforementioned subjects, i.e., the history of racism in Mississippi, Black Lives Matter, the George Floyd case (or any other high-profile case involving an African-American male and police officers), or any opinions or conduct of Defendants with regard to the frequency with which they interact with African-Americans.

## CONCLUSION

For all of the aforementioned reasons, any mention of race, Defendants' character or conduct with regard to acceptance of African-Americans, this State's storied and problematic history of racism, and/or any similarities between this case and any high-profile case involving the use of force by officers against an African-American male, as evidenced by the line of questions regarding the same during the course of depositions in this matter, should be excluded at trial.

**Date: January 6, 2022.**

Respectfully submitted,

**DEPUTY BENJAMIN IVY AND
DEPUTY ANTHONY CHANCELOR**

By:  */s/ Jessica S. Malone*
      One of Their Attorneys

WILLIAM R. ALLEN (MSB #100541)
JESSICA S. MALONE (MSB #102826)
Allen, Allen, Breeland & Allen, PLLC
214 Justice Street
P. O. Box 751
Brookhaven, MS 39602
Tel: 601-833-4361
Fax: 601-833-6647
wallen@aabalegal.com
jmalone@aabalegal.com

## CERTIFICATE OF SERVICE

I, the undersigned of Allen, Allen, Breeland & Allen, PLLC, hereby certify that on this day, I electronically filed the foregoing Memorandum of Authorities in Support of the Motion in Limine with the Clerk of the Court via ECF, which gave notice of the same to:

    Carlos E. Moore, Esq.
    Justin Smith, Esq.
    The Cochran Firm–MS Delta
    P. O. Box 1487
    Grenada, MS 38902-1487
    cmoore@cohranfirm.com
    jsmith3481@yahoo.com

This the 6th day of January, 2022.

*/s/ Jessica S. Malone*
OF COUNSEL